**Randolph M. HOWES, et al.**

v.

**MEDICAL COMPONENTS, INC., et al.**

Civ. A. No. 84–4435.

United States District Court,
E.D. Pennsylvania.

Sept. 21, 1988.

*quoting Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 983 (1st Cir.1986).

Albert E. Fey, New York City, for plaintiffs.

William H. Eilberg, Jenkintown, Pa., for Medical Components.

John W. Chestnut, Chicago, Ill., for American.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Presently before the court are the Defendants' Motion to Dismiss for Failure to Join an Indispensable Party, Defendants' Motion for Sanctions Under Rule 37, and Defendants' Motion for a Limited Re–Opening of Discovery. I shall discuss each in turn.

### *Motion to Dismiss for Failure to Join Indispensable Party*

The defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.Pro. 19 for failure to join an indispensable party, namely, the Hammond, Louisiana law firm of Baham, Anderson, and Bennett ("Baham").[1] On May 26, 1982, plaintiff Janice Howes assigned to Baham an undivided half interest in her rights in the multi-lumen catheter at issue in this litigation. The "Assignment of Rights and Patent," a copy of which is appended to the defendants' motion, states that the assignment was made in exchange for the firm's representation in Louisiana litigation in which plaintiff Randolph Howes was contesting Janice Howes' claims to the catheter.

■ The defendants assert that Baham, as holders of an undivided one quarter interest in the catheter patent, must be joined as plaintiffs in this action. According to the defendants, the failure to join Baham constitutes both a jurisdictional defect and a violation of Fed.R.Civ.Pro. 19.

The defendants argue that under *Waterman v. MacKenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), all co-owners of a patent must be joined in order for a patent infringement suit to proceed. However, as this Court has stated, the adoption of the 1966 amendments to Rule 19 "makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits." *Catanzaro v. International Telephone and Telegraph Corp.*, 378 F.Supp. 203 (E.D.Del.1974); *see also Tycom Corp. v. Redactron Corp.*, 380 F.Supp. 1183 (D.Del.1974). The Advisory Committee Notes accompanying the 1966 amendments make clear that the changes to the rule were designed to "state affirmatively" the relevant factors in determining whether an action should be dismissed when joinder of interested persons is not feasible. The Committee observed that

> courts did not undertake the relevant inquiry or were misled by the "jurisdiction" fallacy. In other instances there was undue preoccupation with abstract classification of rights or obligations, as against consideration of the particular consequences of proceeding with the action and the ways by which those consequences might be ameliorated by the shaping of final relief or other precautions.

The Supreme Court, in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), essentially adopted the view of the Advisory Committee.

> The decision whether to dismiss (i.e, the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors, being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that the court "must" dismiss in the absence of

---

1. The law firm of Baham, Anderson, and Bennett is presently doing business as the law firm of Baham and Anderson. Plff's Mem. in Opp. to Deft's Motion to Dismiss (Docket No. 131), Exh. A, ¶ 7 (Undertaking of Curtis M. Baham). References to "Baham" are to the original firm of Baham, Anderson, and Bennett.

an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him.

390 U.S. at 118–19, 88 S.Ct. at 742–43; *see also Catanzaro, supra,* 378 F.Supp. at 205.

Under its new formulation, Rule 19 "requires courts to face squarely the pragmatic substantive and procedural considerations which properly should be controlling in determining whether a party is needed for the just adjudication of a case ... Rule 19 teaches that whether or not a party is indispensable is the conclusion, not the starting point, of legal analysis." *Tycom Corp., supra,* 380 F.Supp. at 1186.

Thus, in determining whether this action may proceed in the absence of Baham, the Court must consider the factors laid out in Rule 19, which provides, in relevant part:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party to the action if

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff ...

(b) **Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof

cannot be made a party, the court shall determine whether in equity or good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or to those already parties;

second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

third, whether a judgment rendered in the person's absence will be adequate;

forth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Initially, I have no difficulty in determining that Baham is a "necessary" party under Rule 19(a). Baham is the owner of an undivided quarter interest in the Howes patent, and, as such, holds an interest in the subject matter of this litigation. Relief could be fashioned, and Baham's interest could be protected, in the event of a judgment for plaintiffs, as Baham may simply assert its rights under the patent assignment from plaintiff Janice Howes. However, if the defendants prevail, they do face a risk of relitigation by the absent patent owner, as that party may not be bound, or may not consider itself bound, by the judgment in this action. As noted *infra*, there are several considerations which mitigate the risk of relitigation by the absent patent owners. However, I believe that this risk is substantial enough to warrant Baham's joinder under Rule 19(a), if joinder were feasible. *See Tycom Corp., supra,* 380 F.Supp. at 1187–88; *Catanzaro, supra,* 378 F.Supp. at 206.

However, plaintiffs state that Baham, a Hammond, Louisiana law firm, is not subject to service of process of this Court, and no showing has been made to the contrary. In the absence of such a showing, the Court must consider whether Baham is an "indispensable party" under Rule 19(b).

Rule 19(b) contains four factors to be considered in determining whether an action may proceed in the absence of a party who would have been joined under Rule 19(a) if feasible.

The first Rule 19(b) factor is the extent to which a judgment might be prejudicial to Baham or the defendants. Closely related to this consideration is the third factor: whether judgment in Baham's absence will be adequate. In this regard, the plaintiffs have submitted an Undertaking of Curtis M. Baham, Jr., a member and "authorized representative" of the Baham firm, which purports to bind the firm (and its successors and assigns) not to charge the defendants or their customers with the acts of infringement at issue in this lawsuit. Mr. Baham states that his firm does not wish to appear voluntarily in this action and, in consideration for not having to participate as a co-plaintiff, agrees to be bound by any decisions of this Court, or the Court of Appeals for the Federal Circuit, "as if it were a plaintiff in this action." Plff's Memo (Docket No. 131), Exh. A.

As with the affidavit from the patent co-owner in *Catanzaro*, the Baham undertaking allays some of the Rule 19(b) concerns about prejudice to the absent party and to the defendants. The document establishes that the present Baham firm is aware of the litigation in this Court and does not consider itself prejudiced by its absence here. Moreover, the plaintiffs have shown by their conduct in this drawn-out litigation that they can adequately protect the interests of absent patent owners.

However, as in *Catanzaro*, the issue of possible prejudice to the defendants must be seriously examined. The defendants are concerned that Baham's absence exposes them to the threat of multiple litigation if the patent is held invalid or not infringed, as Baham might not be collaterally estopped from relitigating a patent infringement claim. *See Blonder–Tongue Laboratories v. University of Illinois*

*Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

Several factors, including the *stare decisis* effect of a decision by this Court and the threat of attorneys fees under 35 U.S.C. § 285, might deter Baham from relitigating claims determined here. Moreover, the Baham undertaking may bar future litigation, and will undoubtedly have a substantial deterrent effect on those contemplating relitigation of the present claims. The undertaking does not have many of the deficiencies of the affidavit in *Catanzaro*. The undertaking is supported by consideration; is explicitly irrevocable by Baham, its heirs and assigns; was signed by an attorney, who may be expected to understand its consequences; and explicitly waives claims against defendants' customers. *See Catanzaro,* 378 F.Supp. at 207.

The defendants argue that the undertaking is ineffective, as Curtis Baham represents only the present firm of Baham and Anderson, not the predecessor firm of *Baham, Anderson and Bennett* which was the assignee of the patent according to the terms of the May 26, 1982 "Assignment of Rights and Patent." According to the defendants, Curtis Baham testified that Bruce Bennett, a former partner in Baham, is no longer affiliated with the firm, and no written termination agreement exists between Bennett and the present Baham firm. The defendants assert that the undertaking therefore cannot bind either Bennett or the Baham firm. Deft's Reply Memo. (Docket No. 133) at 2. The present record does not establish whether Bennett is in privity with the original Baham firm that received the partial assignment of the Howes patent. Thus, this Court cannot determine conclusively the future effectiveness of the Baham undertaking. For present purposes, it suffices to say that the undertaking may bar, and would certainly discourage, future litigation.[2] Together with the other factors mentioned above, the undertaking operates to reduce the risk of

---

**2.** The plaintiffs suggest that Baham, Anderson, and Bennett might be in privity with Janice Howes, and therefore would be bound by a judgment in this action, regardless of the Baham undertaking. Plff's Memo. at 7. If so, this would obviously eliminate the potential prejudice to the defendants caused by Baham's absence here.

relitigation and multiple liability, and therefore reduces the potential prejudice to the defendants resulting from Baham's absence.

■ The second Rule 19(b) factor is the extent to which the potential prejudice resulting from a party's absence can be remedied by the Court. For the reasons discussed above, I do not believe that the defendants face a substantial risk of multiple liability, or relitigation of the present claims by Baham. However, in light of the defendants' concerns about the effectiveness of the Baham undertaking, it is appropriate at this point to require the plaintiffs to take some additional steps addressing the potential interest of Bruce Bennett in the Howes patent. Accordingly, I will order the plaintiffs to submit a report to the Court within twenty days describing their efforts to contact Bennett and to secure an undertaking from him similar to the Baham undertaking.

The final Rule 19(b) factor is whether the plaintiffs will have an adequate remedy if the action is dismissed for non-joinder. It appears that this complaint would have to be filed in Louisiana in order to make Baham an involuntary Rule 19 plaintiff. However, there is no evidence that the district court in Louisiana would have either proper venue or jurisdiction over the defendants.[3] Thus, the effect of dismissing this action would be to deprive the plaintiffs of a forum for their claims. Given the remote, hypothetical prejudice to the defendant, this outcome is clearly contrary to equity and good conscience.

It must be noted that the present motion was filed at an extremely late date in this litigation, after the case had already proceeded through two rounds of discovery and made one journey to the Federal Circuit. Although a motion to dismiss for failure to join an indispensable party may be made as late as trial on the merits,

> when a moving party is seeking dismissal in order to protect himself against a later suit by the absent person ... and is not

seeking vicariously to protect the absent person against a prejudicial judgment ... his undue delay in making the motion can properly be counted against him as a reason for denying the motion.

Advisory Committee Notes to 1966 Amendments of Fed.R.Civ.Pro. 19.

It is evident that the defendants are not now seeking to protect Baham against an unfavorable judgment. To the contrary, defendants assert that their reason for bringing the motion is their concern about multiple litigation. Deft's Reply Memo. (Docket No. 133), at 3.

I am not persuaded by the defendants attempt to justify their delay in bringing this motion with the claim that they relied upon the allegations in the complaint and supplemental complaint about the ownership of the Howes patent. It has been three and one half years since the plaintiff provided the defendants with a copy of Janice Howes' patent assignment. Plff's Memo. (Docket No. 131), Exh. B and C. (Copy of assignment and 3/25/85 cover letter). Given this, I remain unconvinced that "[i]t did not occur to Defendants until recently that ... Janice Howes had ... sold one half of her interest in the patent." Deft's Memo. (Docket No. 103), at 3. Thus, the untimeliness of defendants' motion is another factor supporting its denial.

### Defendants' Motion for Sanctions

The defendants have moved for sanctions under Fed.R.Civ.Pro. 37, asserting that the plaintiffs have failed to provide "pertinent and damaging information" relating to plaintiff Randolph Howes' Japanese patent application. Defendants seek a limited reopening of discovery to obtain information about Howes' actions before the Japanese Patent Office, as well as an award compensating them for this additional discovery and for the sanctions motion. The plaintiffs oppose this motion on the ground that they have provided all discoverable materials in their possession relating to Howes' Japanese patent application. The plaintiffs

---

**3.** Under 28 U.S.C. § 1400(b), patent infringement actions may be brought only "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of residence."

argue that communications between Howes and his patent attorney, and between the patent attorney and the Japanese patent agent, are privileged.

During discovery, the defendants requested documents relating to Howes patent applications in several foreign countries. At issue in the present motion are six official actions or responses relating to Howes' application before the Japanese Patent Office. The defendants state that on May 6, 1988, they learned through "independent sources" that Howes multi-lumen catheter was held unpatentable by the Japanese Patent Office. Counsel for plaintiffs asserts that on May 10, in response to an inquiry from defendants' counsel, he obtained from Howes' patent attorney the file containing the Japanese patent application materials. On that day, he informed counsel for defendant MedComp that plaintiffs had already produced three of the six official actions or responses. The plaintiffs' counsel produced two more of these documents on May 11, 1988. According to plaintiffs' counsel, he was unable to produce the final document until August 30, 1988, as it was not in his files nor in the files of Howes' patent attorney. The defendants invite the Court to treat the plaintiffs' conduct as a failure to provide discovery.

■ Fed.R.Civ.Pro. 37 permits the Court to impose a variety of sanctions following a party's failure to provide discovery, including the award of expenses and attorney's fees. Generally, the imposition of sanctions, and the choice of an appropriate sanction, is a matter committed to the sound discretion of the trial court. *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 786 (3d Cir.1974). The presence of willfulness or bad faith, while not conclusive, is a relevant factor in this determination. *Id.;* Wright and Miller, *Federal Practice and Procedure: Civil* § 2291.

■ In this case, I do not find that the circumstances surrounding the production of the Japanese patent materials warrant the imposition of sanctions. The plaintiffs produced three of the six official actions or responses on or about January 6, 1988,

produced two of the remaining documents shortly after they were received in May 1988, and produced the final such document after it was received in August 1988. As for the other documents relating to Howes' Japanese patent application, the plaintiff made timely objections to the production of the requested documents, and provided identifying information about each document withheld. Therefore, no sanctions are appropriate for the plaintiffs' failure to produce those documents. *See Lapenna v. Upjohn Corp.*, 110 F.R.D. 15, 25 (E.D.Pa. 1986).

The defendants object to the plaintiff's failure to provide English translations, or summaries, of the documents produced, arguing that it is "inconceivable" that Howe did not receive a direct translation or English summary of the official actions of the Japanese Patent Office. Deft's Memo. (Docket No. 102), at 5. The plaintiffs counter that under Fed.R.Civ.Pro. 34(b), they are required to produce documents only "as they are kept in the usual course of business." The documents in question, the plaintiffs assert, "exist in the plaintiffs' files in Japanese, not as English translations." Plff's Memo. (Docket No. 130), at 6.

■ As the plaintiffs correctly point out, they cannot be compelled to translate foreign language documents for the benefit of their adversary. *In re Puerto Rico Electric Power Authority*, 687 F.2d 501, 506–07 (1st Cir.1982). However, defendants maintain that while they do not claim a right to review nonexistent documents, they are entitled to discovery of English language documents giving the substance of the Japanese actions and responses, such as correspondence from Howes' Japanese patent agent which merely summarizes or paraphrases the rulings.

■ I agree with the defendants that the attorney-client privilege, whatever its scope in the context of communications to or from foreign patent agents, does not apply to communications which simply summarize the official proceedings before foreign patent offices. A communication

with an attorney is privileged to the extent that it seeks legal services or advice. *S.E. C. v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675 (D.D.C.1981); *Bird v. Penn Central Co.*, 61 F.R.D. 43, 46 (E.D.Pa. 1973). The communications at issue here cannot be considered a solicitation of legal services or advice, and their disclosure would not violate the principles of confidentiality underlying the attorney-client privilege. Moreover, disclosure of English summaries of the Japanese actions and reponses would further the interests of justice and convenience, and expedite this litigation. I will therefore order the production of documents, or portions of documents, which simply summarize or describe objectively the official actions and responses.[4]

The defendants also seek to compel the production of communications between Howes and his patent attorney, and between the patent attorney and a Japanese patent agent, concerning the Japanese patent application.[5] The plaintiffs contend that these documents are protected by the attorney-client privilege, and are therefore non-discoverable.

 Not all communications between an attorney and his client relevant to patent matters are protected by the attorney-client privilege. Whether a matter is protected is determined on a case by case basis, keeping in mind the purpose behind the privilege and the need for "flexibility and discretion." *In re Natta*, 410 F.2d 187, 191 (3d Cir.1969). Furthermore, it is by no means clear that all communications between an attorney and a foreign patent agent are privileged under the attorney-client doctrine. *Compare Vernitron Medical Products, Inc. v. Baxter Labs, Inc.*, 186 U.S.P.Q. 324 (D.N.J.) *with Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152 (W.D.N.Y.1982) *and Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1974). Accordingly, I am persuaded that the prudent course at this point is to reserve my ruling until I have had an opportunity to review the withheld documents. I will therefore order the plaintiffs to produce these documents for *in camera* inspection.

### Defendants' Motion for a Limited Re-opening of Discovery

 The defendants have moved for a limited reopening of discovery to allow them to take another deposition of Patent Examiner Dalton L. Truluck, who examined the patent at issue in this litigation. The defendants state that the only question that they wish to put to Truluck is whether his "reasons for confirming the patentability of Claim 7 ... are the same as the reasons for granting the reissue in 1984." Deft's Motion (Docket No. 127), at 1–2.

At his August 1987 deposition, Truluck was examined at some length about the reissue proceeding and was asked specifically about his reasons for allowing the reissue of Claim 7. At that deposition, the Solicitor instructed Truluck not to answer that question. Plff's Memo. (Docket No. 129), Exh. A at 71–72, 120. Although the defendants stated in a September 17, 1987 motion for extension of time that they were contemplating filing a motion to compel Truluck to respond to its deposition questions, no such motion was filed before the close of discovery.

I find that the defendants have not made a sufficient showing of need to take a second deposition, nor have they convincingly demonstrated that their proposed question would elicit a different response

---

4. The work product doctrine does not bar production of translations or summaries of the documents at issue here. "Under Rule 26(b), and the doctrine enunciated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), an attorney's work product is discoverable upon a showing of substantial need by the moving party, and an inability to obtain its equivilant by other means." *Bird, supra*, 61 F.R.D. at 46. The defendants have made the requisite showing. The reasons advanced by the Japanese Patent Office for the rejection of the Howes catheter may be relevant to its patentability here. While it is perhaps possible for the defendants to translate the documents, this could not be done without considerable expense, inconvenience, and delay.

5. I will treat the defendants' motion for sanctions as a motion to compel production of these documents, as this is how it was considered by the parties.

than the one they have already received at the last deposition. Accordingly, I will deny the defendants' motion.

An appropriate order is attached.

## ORDER

Upon consideration of Defendants' Motion to Dismiss for Failure to Join an Indispensable Party, Defendants' Motion for Sanctions Under Rule 37, Defendants' Motion for a Limited Re–Opening of Discovery, and the plaintiffs' responses thereto, and for the reasons stated in the accompanying memorandum, it is ORDERED that:

1. The Defendants' Motion to Dismiss for Failure to Join an Indispensable Party is DENIED.

2. The plaintiffs shall, within twenty (20) days of the date of entry of this order, file a report with the clerk describing their efforts to contact Bennett and to secure an undertaking from him similar to the Baham undertaking.

3. The Defendants' Motion for Sanctions Under Rule 37 is DENIED.

4. The plaintiffs shall produce to the defendants, within twenty (20) days of the date of entry of this order, copies of all documents, or portions of documents, which translate, summarize, paraphrase, or describe the official actions or responses on plaintiff Randolph Howes' application before the Japanese Patent Office. The plaintiff may redact portions of such documents which do not translate, summarize, paraphrase, or describe the official actions or responses. The plaintiffs shall provide to the Court, at Reading chambers, unredacted and redacted copies of the documents provided to the defendants.

5. The plaintiffs shall provide to the Court (Reading chambers), for *in camera* inspection, copies of all withheld documents concerning plaintiff Howes' Japanese patent applications. These documents shall be provided within twenty (20) days of the date of entry of this order. As to each such document, the plaintiffs shall provide a concise explanation of the specific reason for their assertion of privilege.

6. Defendants' Motion for a Limited Re–Opening of Discovery is DENIED.

IT IS SO ORDERED.